## SUPREME COURT.

PRISCILLA ALLEN agt. GEORGE ALLEN.

*Liberties of the jail — party confined for non-payment of alimony and counsel fee not entitled to.*

In an action for divorce, where the defendant has been committed to jail for his failure and refusal to pay money to enable the plaintiff, who is his wife, to prosecute the action against him for divorce and for her support during its pendency, he is not entitled to the jail liberties.

The precept authorized by 3 Revised Statutes (*6th ed.*, 839,, *sec.* 4), is to be for the confinement of the delinquent in prison, which would not be executed by allowing him to go at large over the entire county, under a bond binding him not to transcend such limits.

*Special Term, March,* 1880.

Allen agt. Allen.

MOTION to give the defendant the liberties of the jail, where he is confined for non-payment of alimony and counsel fee.

*E. T. Lovatt*, for motion.

*George F. Langbein*, opposed.

DANIELS, *J.* — The defendant has been committed to jail for his failure and refusal to pay money to enable the plaintiff, who is his wife, to prosecute this action against him for divorce, and for her support during its pendency, and he has now applied for his discharge, by means of the writ of *habeas corpus*, from imprisonment under the commitment by giving the usual bond for the liberties of the jail. So far as the restraint imposed upon him is dependent on his refusal to pay the costs of the preliminary motion it cannot be sustained, for as the law now stands, there can be no imprisonment for the failure or refusal to pay such motion costs (*Code Civil Procedure, sec.* 15). But the fact that he cannot be lawfully imprisoned for that cause will not entitle him to be discharged without payment of the residue of the amounts ordered to be paid, provided, they constitute a legal and proper cause for his imprisonment (*The People* agt. *Jacobs*, 12 *N. Y. Sup. Court*, 428).

As to the costs of the proceedings to punish the defendant, and the amounts ordered to be paid for the temporary support of the wife, and the expenses of her action required to be defrayed, there is no such provision, neither is there any which, in terms or by reasonable implication, entitle him to the jail liberties on giving the usual bond to the sheriff who has him in custody. In one respect the provision on this subject was necessarily changed to render it conformable to the abrogation of that previously existing, allowing the benefit of the limits to persons arrested for the non-payment of interlocutory costs. Prior to that time a person arrested for failing to pay such costs was entitled to the liberties of the jail (3 *R. S.* [6 *ed.*],

Allen agt. Allen.

719, *sec.* 61). ˙But since the right to arrest for the non-payment of such costs has been taken away, the provision declaring who may be entitled to the liberties of the jail has been correspondingly restricted, and that is now, in terms, limited to those who are in custody under orders of arrest, or by virtue of executions in civil actions, or in consequence of a surrender made by the party's bail (*Code Civil Procedure, sec.* 149). These are the only persons now declared to be entitled to the jail liberties, and each of the cases provided for is clearly distinguishable from that of a contempt for the non-payment of money, after which the defendant, in this instance, has been imprisoned.

In *The People* agt. *Bennett* (4 *Paige,* 282) the party had simply failed to pay interlocutory costs, and for ˙that he was entitled to the liberties of the jail under the plain language of the statute as it was at that time in force ; while in the present case he has been adjudged guilty of a contempt because of his failure to pay the moneys held to be necessary for his wife's support during the pendency of the action, and to enable her to vindicate her rights by its prosecution. As to those sums and the costs of the proceedings following his refusal to pay, the authority of the statute has been quite clearly expressed. For, after the amounts ordered to be paid had been demanded personally of the party, and that fact, together with his refusal to pay, have been shown by affidavit, then it has been declared that the court may issue a precept to commit the person so disobeying its order to prison until the sum with the costs of the proceeding shall have been paid (3 *R. S.* [*6th ed.*], 839, *sec.* 4). This is plain language, incapable of being misunderstood, which seems to fully justify so much of the order and commitment, under which the defendant is now restrained as provided for his close confinement until he shall pay such costs and these two sums of money. The precept authorized is to be for the confinement of the delinquent in prison, which would not be executed by allowing him to go at large over the entire county under a bond binding him

not to transcend such limits. If the precept could be executed in that manner, its efficiency would be practically destroyed, and the summary remedy so clearly provided would be deprived of all the coercive power intended by the statute.

In *Ford* agt. *Ford* (41 *How.*, 169; 10 *Abb. N. S.*, 74), this subject was carefully examined and the same conclusion was adopted; but *Leslie* agt. *Leslie* (6 *Abb. N. S.*) considered entirely different subjects. It is needless, however, to examine authorities when the statute has been enacted in language so plain. It requires that the party disobeying the order shall be committed to prison, and when restrained for that cause no provision has been made entitling him to the liberties of the jail. The application for his discharge must accordingly be denied, with costs.